IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| DENA MEREDITH PENFOUND, | ) | CASE NO. 1:20-CV-00806 |
| | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| COMMISSIONER OF SOCIAL | ) | ORDER |
| SECURITY, | ) | |
| | ) | |
| Defendant. | | |

**Introduction**

Before me,[1] is an action under 42 U.S.C. § 405 by Dena Meredith Penfound for

judicial review of the 2019 decision of the Commissioner of Social Security that denied

her 2018 application for disability insurance benefits.[2] The Commissioner has answered[3]

and filed the transcript of the administrative proceedings.[4] Pursuant to my initial[5] and

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental fact

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred
to me by United States District Judge Dan Aaron Polster. ECF No. 15.
[2] ECF No. 1.
[3] ECF No. 12.
[4] ECF No. 13.
[5] ECF No. 5.
[6] ECF No. 14.
[7] ECF Nos. 18 (Penfound), 21 (Commissioner), 23 (Penfound reply).

sheets and charts.[8] The parties have met and conferred with the objective of clarifying or reducing the issues.[9] They have participated in a telephonic oral argument.[10]

For the reasons that follow, the decision of the Commissioner will be reversed and the matter remanded for further proceedings consistent with this opinion.

## Opinion of the ALJ

Penfound was born on June 18, 1964,[11] which made her 55 years old at the time the opinion was issued.[12] She graduated from high school[13] and had past relevant work as a small appliance inspector, underwriting clerk, service manager, title clerk and department manager.[14] She lives with her husband and has a driver's license.[15] Her husband takes care of the house, her and a dog.[16] She stated that she stopped working full-time because of problems with her concentration,[17] but also said that she used to come home from her subsequent part-time work in tears due to pain in her feet, abdomen and hands.[18]

The ALJ found that she had the following severe impairments: cervical disc disease, glaucoma, fibromyalgia, peripheral neuropathy, and benign paroxysmal positional

---

[8] ECF Nos. 18, Attachments 1,2 (Penfound), 22 (Commissioner).
[9] ECF No. 24.
[10] ECF No. 26.
[11] Tr. at 208.
[12] *Id.* at 40.
[13] *Id.* at 52.
[14] *Id.* at 72-73.
[15] *Id.* at 52.
[16] *Id.* at 64.
[17] *Id.* at 56-57.
[18] *Id.* at 61.

vertigo.[19] In addition, the ALJ found that Penfound had the following non-severe impairments: attention deficit hyperactivity disorder (ADHD), depression and anxiety.[20]

In making the determination that the three mental impairments were non-severe, the ALJ initially reviewed an April 2018 psychological consultative examination conducted by Dr. Victoria Liao, Psy.D.[21] Dr. Liao found that Penfound's activities of daily living are not impacted by psychological or medical symptoms.[22] She further found that Penfound's mental functioning was essentially normal, with above average intelligence and that she exhibited good judgment.[23] In addition, after finding that Penfound had no mental health impairment,[24] Dr. Liao gave an opinion as to Penfound's work related mental abilities that found no limitations in all four of the relevant "B" categories.[25]

The ALJ then considered a mental status examination (MSE) from November 6, 2019 that was largely unremarkable, except for finding that Penfound "loses track of conversation, [is] easily distracted, [and has] difficulty shifting [attention]," as well as that her mood and affect was "anxious."[26]

---

[19] *Id*. at 32.
[20] *Id*.
[21] *Id*. at 33.
[22] *Id*.
[23] *Id.*
[24] *Id*. at 33-34.
[25] *Id*. at 34.
[26] *Id*.

3

The ALJ then found that Penfound does not have an impairment or combination of impairments that meets or medically equals a listing.[27] In reaching that conclusion, the ALJ considered Listings 1.04 (disorders of the spine), 2.02 (loss of central visual acuity) and 11.14 (peripheral neuropathy), as well as SSR 12-2p (trigger points for establishing fibromyalgia).[28] In addition, the ALJ individually addressed lupus, irritable bowel syndrome, benign paroxysmal positional vertigo and psoriasis.[29]

Penfound was then determined to have the residual functional capacity (RFC) for light work, with the following exceptions: She can occasionally push and pull, bilaterally, with the lower extremities. She can frequently balance and frequently climb ramps/stairs. She can never climb ladders/ropes/scaffolds. She must avoid all exposure to unprotected heights and to dangerous machinery.[30]

Here, the ALJ considered first Penfound's own statements about being unable to work due to pain in her feet, hands and stomach, as well as her references to cataracts, fibromyalgia, psoriasis and her mental impairments.[31] In that regard, he found that although she has cataracts, her vision is normal, and, despite her fibromyalgia and cervical disc disease, a physical exam of August 5, 2019 showed no pain or swelling in all joints, with normal strength and range of motion.[32]

---

[27] *Id*. at 35.

[28] *Id*. at 35-37.

[29] *Id*. at 37.

[30] *Id*. at 37-38.

[31] *Id*. at 38.

[32] *Id*. at 38-39.

He also noted that her peripheral neuropathy results in no evidence of gait abnormality nor does it require Penfound to use an assistive device for mobility.[33] However, the ALJ noted that the limitations on push/pull in the lower extremity was placed in the RFC due to the peripheral neuropathy.[34]

As to the opinion evidence, the ALJ first cited the opinions of the state agency consultative physicians, which the ALJ found to be persuasive.[35] The ALJ then addressed a May 9, 209 medical statement from Dr. Giuseppe Antonelli, M.D. a treating source.[36] The ALJ summarized Dr. Antonelli's responses on a four-page questionnaire as stating that Penfound is capable of less than sedentary work and found the opinion not persuasive, noting that "it is not in any way supported by or consistent with the evidence of record discussed above."[37]

Then, the ALJ considered a November 6, 2019 opinion from Robert Ussain, PMHNP (psychiatric mental health nurse practitioner).[38] The ALJ found this opinion unpersuasive.[39] In that regard, the ALJ cited the fact that Penfound had been seen by Ussain only twice; that Ussain's opinion was influenced by Penfound's self-reporting and inconsistent with Ussain's own notes and the balance of other evidence; and that Ussain

---

[33] *Id*. at 39.
[34] *Id.*
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] *Id*.
[39] *Id*.

only tangentially included a diagnosis in the context of the mental impairment questionnaire.[40]

Finally, with the assistance of testimony from a vocational expert (VE), the ALJ found that Penfound was capable of performing her past relevant work as an underwriting clerk, a service manager and a title clerk, and was therefore not disabled.[41]

### Issues on Judicial Review

Penfound presents three issues on judicial review:

1.      The ALJ committed harmful error when she failed to properly evaluate the evidence documenting [Penfound's] severe impairments and when she failed to find the assessments of treating physicians persuasive.

2.      The ALJ committed harmful error when she failed to find [Penfound's] testimony credible and failed to properly consider [Penfound's] pain.

3.      At Step Four of the sequential evaluation, the ALJ erroneously found that [Penfound] could still perform her past relevant work as an underwriting clerk, a service manager and as a title clerk.[42]

---

[40] *Id.*
[41] *Id.* at 39-40.
[42] ECF No. 18 at 1.

## Analysis

### A.    Standards of Review

This matter is reviewed under the well-established standard of substantial evidence, which need no be restated here. Further, the evaluation of the opinion evidence is conducted under the new rubric that replaces the longstanding treating source rule with a test that determines the persuasiveness of an opinion by reference to how well supported it is and how consistent it is with the other evidence.[43]

### B.    Application of Standards

The critical, related issues here involve the treatment by the ALJ of Dr. Antonelli's opinion and the handling of Penfound's own reports of symptoms.

As to Dr. Antonelli, the ALJ, as noted above, acknowledges that Antonelli is "one of [Penfound's] physicians," but does no more to show the length of that relationship. In fact, even under the new rules, one of the factors to be considered as to an opinion's persuasiveness is the relationship of the provider to the claimant, the length of that relationship and other similar factors.[44] Here, the record seems to show that Dr. Antonelli saw Penfound seven times from November 2017 to May 2019.[45] Plainly, this was an extensive treating relationship that should have factored into any determination of how persuasive Dr. Antonelli's opinion was.

---

[43] 20 C.F.R. § 416.920c.
[44] 20 C.F.R. § 416.920c(c)1-4.
[45] Tr. at 411, 417, 425, 496, 498, 500, 920.

Further, treatment notes, such as the notes from November 6, 2017 (pain in feet);[46] June 26, 2018 (feet pains not tolerated);[47] January 4, 2019 (pains in hands and feet);[48] January 18, 2019 (peripheral neuropathy, very painful);[49] must be read as supporting Dr. Antonelli's specific diagnosis of peripheral neuropathy that was made on March 20, 2018.[50] To then summarily dismiss these clinical records from a treating source with no direct analysis or comment – save the cursory remark that Dr. Antonelli's opinion was not supported "in any way" by the other evidence discussed by the ALJ[51] – is contrary to the rubric's standard as to supportability, which states that the more relevant the objective evidence and supporting explanations presented by a medical source, the more persuasive that source's opinion will be.[52] Indeed, internal supportability of a medical source opinion is as important a factor as is the consistency of that opinion with other evidence of record.[53]

Thus, the fact that the ALJ here did not follow the rules for evaluating a medical source opinion, and further was deficient, as noted, in what analysis was conducted, means that the determination that Dr. Antonelli's opinion was "not persuasive" is not supported by substantial evidence.

---

[46] *Id*. at 411.
[47] *Id*. at 496.
[48] *Id*. at 498.
[49] *Id*. at 500.
[50] *Id*. at 425.
[51] *Id*. at 39.
[52] 20 C.F.R. § 416.920c(c)(1).
[53] 20 C.F.R. § 416.920c(a).

Dr. Antonelli's opinion is crucial for formulating an RFC, since it greatly limits Penfound's time to be on task during a workday, concluding that she would be off task for more than 25% of a workday and absent for 3 days per month.[54] Without here prejudging the ultimate persuasiveness of Dr. Antonelli's opinion, it needs to be properly considered under the applicable rule and the conclusion as to its persuasiveness meaningfully articulated before any resulting RFC can be formulated.[55]

As regards the conclusion as to Penfound's own complaints as to the effect of her symptoms, the preceding discussion of Dr. Antonelli's opinion and the footnote regarding the overlap between that opinion and the opinion of Dr. Liao, apply with equal force here. To the degree that Dr. Antonelli is found more persuasive, Dr. Liao's older opinion may be found less so, and Penfound may have greater support for the limiting effect of her symptoms.

---

[54] Tr. at 483-86.

[55] I also note that Dr. Antonelli's 2019 opinion here was rendered after Dr. Liao's 2018 opinion that was so influential in the RFC as formulated. While it is true that a latter in time opinion need not be always accepted over an earlier one, and equally true that a treating source need not always be preferred to an examining one, some explanation of how the opinions relate needs to be provided. Even acknowledging that Dr. Liao's opinion was a psychological consultation, not a medical function opinion, Dr. Antonelli's remarks about Penfound's pain overlap with Dr. Liao's comment that Penfound was not restricted in her activities of daily living and was able to concentrate on complex tasks. See, tr. at 33.

**Conclusion**

For the reasons stated, the decision of the Commissioner denying benefits to Dena Meredith Penfound is reversed on the ground that it is not supported by substantial evidence. The matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 30, 2021                                   s/William H. Baughman Jr.
                                                                              United States Magistrate Judge